## Case No. 12,463.

SCHMIDT et al. v. The GEORGE NICHOLAUS.

[N. Y. Times, Feb. 12, 1855.]

District Court, S. D. New York.   Feb. 9. 1855.

SHIPPING—REPAIRS—HYPOTHECATION BY MASTER.

[When necessary repairs can be made within a reasonable time. the master may hypothecate freight and cargo for that purpose, instead of transhipping.]

[This was a libel by John W. Schmidt and others against the bark George Nicholaus and her cargo upon a bottomry bond.]

Betts & Donohue, for libelants.
Mr. Lord, for claimants.

Before INGERSOLL, District Judge.

The libel in this case was filed to recover the amount of a bottomry bond, executed by the master of the bark George Nicholaus upon the bark, her freight and cargo. The bark. which was owned in Hamburg. was bound from a port in the Pacific Ocean, with a car-

go of guano, owned by others than the owners of the bark, to Hampton Roads for orders, and thence to some other port of the United States to discharge. In March, 1852, she put into Rio Janeiro in distress, and a survey being held, the needed repairs and supplies to enable her to prosecute her voyage and deliver her cargo were ordered. The master of the bark had no funds to procure such repairs and supplies, and could not procure them either on his own credit, or on the personal credit of the owners of the bark. He therefore wished to raise money upon bottomry, and accordingly advertised for terms, but could only obtain the needed funds by a hypothecation of the bark, her freight and cargo, and at the rate of interest named in the bond. The funds were accordingly advanced by Messrs. Farrand & Wilmer, merchants at Rio, to the amount of $3,917.74, which was expended in the necessary repairs of the bark, and a bottomry bond duly executed to them by the master, purporting to bind the bark, her freight and cargo, for the payment, five days after the arrival of the bark at her port of discharge, of the said principal, and $940.26 premium,—amounting to $4,858. The bark afterwards pursued her voyage to Hampton Roads, and thence to the port of New-York to discharge. Upon her arrival here she was libeled for seamen's wages, and sold for an amount little more than enough to satisfy the seamen's claim. The present libel was filed by the libelants. who have become the assignees of the bottomry bond, against the bark, her freight and cargo, to recover the amount due. The balance of the proceeds of the bark and the freight are not sufficient to pay it, and the libelants are without adequate remedy unless they can resort to the cargo. The owners of the bark do not contest the right of the libelants to the proceeds of the bark and to her freight. But the owners of the cargo insist that the cargo is not holden for the libelant's claim; that no state of facts existed at Rio Janeiro which authorized the master of the bark to bind even the vessel by a bottomry bond; and that there was no necessity for his hypothecating the cargo, because there were several freighting vessels at Rio bound for the United States, in which case it was the master's duty to have transhipped the cargo, and therefore he had no right to hypothecate it.

HELD BY THE COURT: That on the finding of the facts as above set forth, there was an absolute necessity that the bark should have the repairs, and there was no way in which the master could procure them except by bottomry. The price which she (a foreign vessel) brought at a forced marshal's sale in this port would be very inadequate proof of her value at Rio, or that she was not worth repairing there. as claimed by the respondents. That a master of a vessel in a foreign port has the right, in case of necessity, to hypothecate his cargo as well as his ship and

freight, for repairs which are necessary in order to carry the cargo to its destination—a power given him by the law, without any express authority from the owners, and required by the necessities of navigation and commerce.

In an ordinary state of things, the master of a vessel is a stranger to the cargo, when it is owned by a freighter, except for the purposes of safe custody and conveyance. But in cases of unforseen necessity, the character of agent is thrown upon him, not by the appointment of the owner, but by the policy of the law. The necessities of navigation give power to a master in certain cases to control and dispose of the cargo of a general freighter, and give him power and authority over it, adequate to the purpose of discharging his duty of delivering it at its destination. In such cases of severe necessity the law makes him the agent of the owners, and as such he is authorized to do what it is presumed the owners would do. Hence, as is well settled, in case of necessity he may sell perishable articles; or he may sell part of the cargo to enable him to pursue his voyage and carry the balance to its destination; or he may destroy the cargo by throwing it overboard if necessary to save the ship. This power of selling a part or the whole of the cargo, or of destroying it, is not given him by the owners, but is thrown upon him by the law, and whatever he does by virtue of it is as binding upon the owners as if they had expressly authorized it. This power of the master has long been recognized by the courts of admiralty. His power to hypothecate the whole cargo instead of selling a part of it, to enable him to prosecute his voyage, was not recognized by the courts until a more recent period, but it had been the practice of shipmasters to do so some time before it had been expressly decided by any admiralty decision that they had the legal right to do so. No express decision legalizing the practice was had until the case of The Gratitudine, 3 C. Rob. Adm. 240, in which Sir William Scott decided that the master had such right. The law as laid down in that case has not been questioned in subsequent cases which have arisen. Judge Story, in the case of The Packet [Case No. 10,654], says: "The case of The Gratitudine has established upon the most satisfactory and conclusive grounds the right of the master in a case of necessity to hypothecate the cargo as well as the ship and freight."

But it is claimed by the respondents that although this is the law, yet where the master has an opportunity to tranship, it is his duty to do so, and that when he has such opportunity, and that is known to the bottomry lender, he cannot hypothecate the cargo for the repairs of the vessel. In certain cases, as, for instance, where a vessel is unseaworthy and unfit to be repaired, or where the master cannot raise funds to repair her, it may be his duty to tranship. But where the

ship can be made seaworthy within a reasonable time, and the master can raise funds for that purpose by hypothecating the ship, freight and cargo, there is no law which so makes it the duty of the master to tranship that if he fails to do so he shall not have the power to hypothecate. That was expressly decided in the case of The Gratitudine, which is sustained by Judge Story in the case of The Packet [supra]. The master is not deprived of the power to hypothecate, because he can tranship, nor is the lender on bottomry deprived of his right to look to the cargo hypothecated, because he had good reason to believe that the master could tranship if he chose. If this were so, then the rule that the master may in case of necessity hypothecate his cargo for the repairs for his ship would be abrogated in this port and other large commercial ports, because he would at all times have it in his power to tranship his cargo on board another vessel. The decree therefore must be in favor of the libelants. The balance of the proceeds of the bark, remaining in the registry of the court, and the freight money, must be first applied to the payment of the libelants' demand, and the balance then remaining due must be paid by the cargo.